UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEYWON BECKHAM,

          Petitioner,

v.

SHERMAN CAMPBELL,

          Respondent.
                           /

Case No. 2:18-cv-12141

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING PETITION FOR
WRIT OF HABEAS CORPUS [1],
DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Teywon T. Beckham petitioned the Court for a writ of habeas corpus. ECF 1. Petitioner challenged his convictions for assault with intent to do great bodily harm less than murder, first-degree home invasion, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. *See id*. The etition raised two ineffective assistance of counsel claims: (1) Petitioner's trial counsel failed to call an exculpatory witness and failed to investigate and interview two witnesses; and (2) Petitioner's appellate counsel failed to investigate two corroborating witnesses. *Id*. at 8–11. Respondent argued that both claims are meritless and that some of the claims are procedurally defaulted. *See* ECF 7. The Court will address each claim in turn.

1

## BACKGROUND

Petitioner's convictions arise from a shooting in South Haven, Michigan. On the day of the crime, Petitioner and his co-defendant Jason Henderson, bought a large knife and shotgun shells. *People v. Beckham*, No. 320057, 2015 WL 2448521, at *1 (Mich. Ct. App. May 21, 2015). After, the pair "decided to get cocaine from Shawn Gil." *Id*.

Later that night, Gil's significant other, who was in a bedroom with Gil, heard noises outside the bedroom door, so she woke Gil and called 911. *Id*. Gil left to investigate and found a "man standing in the den" wearing a white t-shirt. *Id*. The man then "turned around and fired a shot at Gil." *Id*.

One of Gil's neighbors testified that after she heard the gun shots, she ran outside and saw a "man run behind her home wearing a white t-shirt." *Id*. Henderson stated that he heard two gunshots and that Petitioner then "came back to the SUV" where Henderson was waiting. *Id*. While the two drove away, Petitioner told Henderson "that he thought he had shot Gil[.]" *Id*. But before the pair made it home, the SUV broke down. *Id*.

Petitioner then flagged down a passing motorist to help jump-start the SUV. *Id*. The motorist testified that Petitioner was wearing a white t-shirt, and that he "noticed two guns lying in the ditch[.]" *Id*. The jump-start did not work, and after leaving the scene, the motorist called the police. *Id*. Police then arrived and arrested Petitioner—who was wearing a white t-shirt—and Henderson. *Id*.

During the arrest, officers found glass shards in Petitioner's shoes that matched the broken glass found in Gil's home. *Id*. A Michigan State Police Trooper

2

also "testified that [Petitioner had] told him that he and Henderson both went into" Gil's home. *Id.*

A jury later convicted Petitioner "of assault with intent to do great bodily harm," in violation of Mich. Comp. Laws § 750.84, "first-degree home invasion," in violation of Mich. Comp. Laws § 750.110a(2), "felon in possession of a firearm," in violation of Mich. Comp. Laws § 750.224f, "and possession of a firearm during the commission of a felony[,]" in violation of Mich. Comp. Laws § 750.227b. *Id.*

Petitioner filed an appeal as of right in the Michigan Court of Appeals and argued that his counsel's failure to call an exculpatory witness denied him his constitutional right to the effective assistance of counsel. But the Michigan Court of Appeals affirmed Petitioner's convictions, *Beckham*, 2015 WL 2448521, at *1–2, and the Michigan Supreme Court denied further review, *People v. Beckham*, 498 Mich. 950 (2015).

Petitioner then moved for a relief from judgment in the trial court and raised an ineffective assistance of counsel claim. ECF 8-11. The trial court, however, denied the motion. ECF 8-12. In the end, the state appellate courts denied leave to appeal the ruling. *People v. Beckham*, No. 339364 (Mich. Ct. App. Sept. 15, 2017); *People v. Beckham*, 501 Mich. 1081 (2018). Petitioner then brought the pending petition.

**LEGAL STANDARD**

The Court may only grant habeas relief to a state prisoner if a state court adjudicated his claims on the merits and the adjudication was "contrary to" or led to an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). "A state court's decision is 'contrary to' . . . clearly established law if it

3

'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at" a different result. *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

A state court unreasonably applies Supreme Court precedent only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). A merely "incorrect or erroneous" application is insufficient. *Id*. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision follows clearly established federal law as determined by the Supreme Court when the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Lower federal court decisions "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

4

## DISCUSSION

I.  Ineffective Assistance of Trial Counsel

Petitioner seeks habeas relief because his defense counsel was ineffective for: (a) failing to call Leo Barry as a defense witness; and (b) failing to investigate and interview Leo Barry and Anitrius Atkinson. ECF 1, PgID 8–11.

A Sixth Amendment right to effective assistance of counsel violation is established where an attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner shows both deficient performance and prejudice, "it cannot be said that the conviction or [] sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

On the whole, the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential [] and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and

5

quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable[;]" but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court will address each claim against Petitioner's trial counsel in turn.

### A. *Failing to Call an Exculpatory Witness*

Petitioner first argues that his trial counsel was ineffective for failing to call Leo Barry as a witness. ECF 1, PgID 8. He contends that Barry's testimony would have been exculpatory because it supported the defense's theory that Henderson was not the shooter. *Id.*

But there was other testimony that tied Petitioner to the crime. For instance Gil testified that the man who shot at him was wearing a white t-shirt. ECF 8-7, PgID 324. And when the police arrested Petitioner shortly after the shooting, he was wearing a white t-shirt. *Beckham*, 2015 WL 2448521, at *1. The witness who tried to jump-start Henderson's car also testified that Petitioner was wearing a white t-shirt. *Id.*

But Petitioner argues that Barry would have testified that, when Henderson's vehicle was stranded on the side of the road after the shooting, Barry drove Henderson home so that Henderson could retrieve jumper cables. ECF 1, PgID 8. And Petitioner argues that the testimony would have allowed the jury to infer that Henderson changed shirts before his arrest. *Id.*

The Michigan Court of Appeals held that the trial counsel was not ineffective in failing to call Barry as a witness. *Beckham*, 2015 WL 2448521, at *2. Petitioner

6

provided no evidence to support a finding that Barry's testimony would have been favorable. The police report detailing Barry's role stated only that Barry brought gasoline and then drove Henderson home to retrieve jumper cables; it gave no sign that Henderson changed his shirt. *Id.* Petitioner also made no attempt to explain what Barry's trial testimony would have been. In short, the state court held that Petitioner did not "overcome the strong presumption that defense counsel's decision not to call Barry as a witness was objectively unreasonable." *Id.*

The state appellate court also held that Petitioner failed to satisfy *Strickland's* prejudice prong because other evidence supported his identity as the shooter. *Id.* For one, Petitioner admitted to a Michigan State Police Trooper that he went inside Gil's home. *Id.* Not to mention, Petitioner's shoes had glass shards that matched glass from Gil's home but Henderson's shoes did not. *Id.*

In sum, the decision of the Michigan Court of Appeals was not contrary to or an unreasonable application of *Strickland*. At any rate, Petitioner has proffered no evidence about the contents of Barry's expected testimony. That said, conclusory allegations of ineffective assistance of counsel with no evidentiary support cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner therefore did not show that counsel was ineffective in failing to call Barry or that he was prejudiced by Barry's absence.

### B. *Failure to Interview and Investigate Witnesses*

In his second ineffective assistance of counsel claim, Petitioner reasserts his argument that his trial counsel erred in failing to investigate, interview, and call

7

Barry as a witness. ECF 1, PgID 11. He also argues that counsel erred in failing to investigate and interview Anitrius Atkinson. *Id*. For the reasons discussed above, Petitioner's claim related to Barry is meritless.

For Petitioner's claim about Atkinson, Respondent argues that the claim is procedurally defaulted. ECF 7, PgID 66–71. Because procedural default ordinarily is not a jurisdictional matter, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). In fact, it may be more economical for the federal court to simply review the merits of a petitioner's claims rather than to address "complicated issues of state law." *Lambrix*, 520 U.S. at 525. Indeed, the Court finds that it is more efficient to proceed directly to the merits of the claim.

Petitioner argues that Atkinson would have given favorable testimony about what he was wearing on the day of the shooting and refers to her affidavit to support his argument.[1] ECF 1, PgID 11. In her affidavit, Atkinson states that, "on or about May 22, 2013[,]" she was walking when she saw two men approaching. ECF 8-11, PgID 732. One of the men was carrying a gun. *Id*. As the men drew closer, she recognized them as Henderson and Petitioner. *Id*. Atkinson's affidavit stated that

---

[1] Petitioner states that Atkinson's affidavit is attached to the Petition. ECF 1, PgID 11. It is not. Still, the affidavit is part of this Court's record because Respondent filed it in accordance with Rule 5 of the *Rules Governing Section 2254 Proceedings for the United States District Courts*. ECF 8-11, PgID 732. Atkinson's affidavit bears two dates: September 19, 2015, and September 19, 2016. *Id*. But the Court need not resolve the discrepancy to fairly determine Petitioner's claim.

8

Henderson was holding the gun and wearing a white shirt while Petitioner was wearing a dark-colored shirt. *Id.* Petitioner maintains that Atkinson's testimony would have established that Henderson wore a white shirt on the day of the shooting and thus that Henderson was the shooter. ECF 1, PgID 11.

But the trial court—the last state court to issue a reasoned decision addressing the claim—held that Petitioner failed to overcome the presumption that his trial counsel's decision to not call Atkinson resulted from trial strategy. *See* ECF 8-12, PgID 754. The trial court reasoned that, although Atkinson's testimony may have been somewhat helpful, her testimony would have been harmful as well because "[s]he corroborate[d] testimony in the case that these two individuals were acting in unison on the date in question, in possession of a gun on the date in question, and willing to use it on others on the date in question." *Id.* The state court also held that Petitioner failed to show a reasonable probability that Atkinson's testimony would have altered the outcome and overcome the strength of the prosecution's case. *Id.*

For two reasons, the state court's decision was not unreasonable. First, Petitioner provides no evidence to support a finding that defense counsel did not investigate and consider calling Atkinson as a witness. Counsel could have reasonably concluded that her testimony that Petitioner and Henderson had planned to rob her until she recognized them would outweigh any benefit from Atkinson's testimony about the shirt colors. Second, Atkinson's testimony that Petitioner was wearing a dark shirt was of little value given that Petitioner was wearing a white t-shirt when arrested and he never claimed to have changed his t-shirt that night.

9

Given these two reasons and the significantly incriminating evidence cited by the trial court, it was not unreasonable for the state court to conclude that counsel's decision not to call Atkinson was a reasonable defense strategy and that Petitioner was not prejudiced by defense counsel's decision. The Court therefore denies relief.

## II. Ineffective Assistance of Appellate Counsel

Finally, as part of his second claim, Petitioner argues that his appellate attorney was ineffective for failing to independently investigate Barry and Atkinson's potential testimony and to raise a related ineffective assistance of trial counsel claim. ECF 1, PgID 11.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). But a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Supreme Court has explained that "for judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id.* at 754. Strategic and tactical choices about which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Because the Court finds that Petitioner's underlying ineffective assistance of defense counsel claims lack merit, appellate counsel was not ineffective for failing to

10

include them on direct review. *Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019). The Court will therefore dismiss the petition.

III.    Certificate of Appealability and In Forma Pauperis Status on Appeal

To appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Thus, Petitioner must show that reasonable jurists could debate whether the Court should have resolved the petition in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, jurists of reason would not debate the Court's denial of these claims. The Court therefore denies a certificate of appealability. The Court will also deny Petitioner leave to appeal in forma pauperis because Petitioner cannot take an appeal in good faith. *See* 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: November 23, 2020

11

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 23, 2020, by electronic and/or ordinary mail.

                                            s/ David P. Parker
                                            Case Manager